UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SABINA GARCIA,                    )     Case No. CV 06-700-JTL
                                  )
              Plaintiff,          )
                                  )
         v.                       )     MEMORANDUM OPINION AND ORDER
                                  )
MICHAEL J. ASTRUE,                )
Commissioner of Social            )
Security,                         )
                                  )
              Defendant.          )
_____)

**PROCEEDINGS**

On February 9, 2006, Sabina Garcia ("plaintiff") filed a Complaint seeking review of the Commissioner's denial of her application for disability insurance benefits. On July 7, 2006, the parties filed a Consent to Proceed Before United States Magistrate Judge Jennifer T. Lum. Thereafter, on October 13, 2006, defendant filed an Answer to Complaint. On December 21, 2006, the parties filed their Joint Stipulation.

The matter is now ready for decision.

///

**BACKGROUND**

On September 10, 2001, plaintiff filed an application for disability insurance benefits.[1] (Administrative Record ["AR"] at 96-98). In her application, plaintiff claimed that, beginning on May 30, 1996, impairments in her neck, back, left leg, left arm, and collarbone prevented her from working. (AR at 107). The Commissioner denied plaintiff's application for benefits. (AR at 83-88). On March 11, 2002, plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (AR at 89).

On December 3, 2002, the ALJ conducted a hearing in Long Beach, California, at which plaintiff and a vocational expert testified. (AR at 55-82). On February 19, 2003, the ALJ issued his decision denying benefits. (AR at 16-22). In his decision, the ALJ concluded that plaintiff suffered from severe impairments of degenerative lumbar disc disease, diabetes mellitus, hypertension, hypothyrodism, ulcers, and status post two fractures of the clavicle, but these impairments did not meet or equal any of the criteria contained in the Commissioner's Listing of Impairments, 20 C.F.R. Section 404, Subpart P, Appendix 1. (AR at 21). The ALJ also found that, based upon her residual functional capacity, plaintiff retained the capacity to perform the light work of cloth folding and thread cutting and the sedentary work of sticker-flowers and table worker. (Id.). Ultimately, the ALJ found that plaintiff was not disabled pursuant to the Social Security Act. (Id.).

///

---

[1] Plaintiff filed a prior application for supplemental security income, which was denied at the initial stages. (AR at 383).

After the Appeals Council denied her request for review of the ALJ's decision on September 11, 2003, plaintiff sought review in the district court. (AR at 5-7). On June 3, 2004, the parties stipulated that the action be remanded to the ALJ to further evaluate plaintiff's subjective complaints, give further consideration to the treating and examining source opinions, explain the weight given to the opinion evidence, give further consideration to plaintiff's maximum residual functional capacity, and obtain supplemental evidence from a vocational expert to clarify the effect of the assessed limitations on plaintiff's occupational base. On December 16, 2004, the Appeals Council remanded the case to the Commissioner for further proceedings, pursuant to the stipulation. (AR at 408-10).

Pursuant to the remand order, the ALJ conducted a supplemental hearing in Long Beach, California on November 3, 2005. (AR at 501-18). Plaintiff appeared with counsel but did not testify. Michael Gurvey, M.D., a medical expert, and Jeanine Metildi, a vocational expert, testified. (AR at 506-14, 514-17).

On November 17, 2005, the ALJ issued another decision denying benefits. (AR at 382-92). In his decision, the ALJ concluded that plaintiff suffered from severe impairments of status post left clavicle fracture and history of low back and neck pain, but found that these impairments did not meet or equal any of the criteria contained in the Commissioner's Listing of Impairments, 20 C.F.R. Section 404, Subpart P, Appendix 1. (AR at 391). While she could not perform her past relevant work, the ALJ determined that plaintiff could perform a significant range of light work, such as the work of an assembly press operator, as well as an inspector/hand packaging and small parts assembler. (AR at 391). Ultimately, the ALJ found that

1  plaintiff was not disabled pursuant to the Social Security Act.   (AR
2  at 392).

3      Plaintiff filed a request with the Appeals Council for review of
4  the ALJ's decision.   (AR at 437-38).

5

6                        **PLAINTIFF'S CONTENTIONS**

7      Plaintiff makes the following claims in the Joint Stipulation:

8      1.   The ALJ failed to properly evaluate the treating physician's
9  medical reports as ordered by the remand order.

10     2.   The ALJ failed to properly evaluate plaintiff's subjective
11 complaints as ordered by the remand order.

12     3.   The  ALJ  failed  to  properly  evaluate  plaintiff's  pain
13 syndrome  and  exertional  limitations  relating  to  her  residual
14 functional capacity.

15     4.   The  ALJ  failed  to  properly  evaluate  plaintiff's  use  of
16 medications and the side effects relating to the evidence in the
17 record and testimony of plaintiff.

18     5.   The  ALJ  failed  to  consider  the  combined  impact  of  all
19 exertional  and  non-exertional  impairments  upon  the  remaining
20 occupational base.

21     6.   The ALJ failed to properly evaluate the testimony of the
22 vocational expert.

23

24                        **STANDARD OF REVIEW**

25     The Court reviews the ALJ's decision under 42 U.S.C. § 405(g) to
26 determine  whether  the  ALJ's  findings  are  supported  by  substantial
27 evidence and whether the proper legal standards were applied.   DeLorme
28 v. Sullivan, 924 F.2d 841, 846 (9th Cir. 1991).   Substantial evidence

                                     4

means "more than a mere scintilla" but less than a preponderance. Richardson v. Perales, 402 U.S. 389, 401 (1971); Desrosiers v. Secretary of Health & Human Servs., 846 F.2d 573, 575-76 (9th Cir. 1988).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson, 402 U.S. at 401.  This Court must review the record as a whole and consider adverse as well as supporting evidence.  Green v. Heckler, 803 F.2d 528, 529-30 (9th Cir. 1986).  Where evidence is susceptible of more than one rational interpretation, the ALJ's decision must be upheld.  Gallant v. Heckler, 753 F.2d 1450, 1452 (9th Cir. 1984).

**DISCUSSION**

**A.   The Sequential Evaluation**

The Commissioner has established a five-step sequential process for determining whether a claimant is disabled.  20 C.F.R. §§ 404.1520, 416.920 (1991); Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987).  At step one, disability benefits are denied if the Commissioner determines that the claimant is engaged in substantial gainful activity.  Bowen, 482 U.S. at 140.  At step two, the Commissioner evaluates whether the claimant has a medically severe impairment which significantly limits his physical or mental ability to do basic work activities.  Id. at 140-41.  Step three requires a consideration of whether the claimant's impairment is equivalent to one of a number of listed impairments that are so severe as to preclude substantial gainful activity.  Bowen, 482 U.S. at 141.  If the impediment meets or equals one of the listed impairments, the claimant is presumptively disabled.  Id.  If the impairment is not one

that is conclusively presumed to be disabling, step four of the evaluation determines whether the impairment prevents the claimant from performing work he has performed in the past.  Id.  If the claimant cannot perform his past work, the fifth and final step determines whether he is able to perform other work in the national economy in light of his age, education and work experience.  Id. at 142.  The claimant is entitled to disability benefits only if he is not able to perform such work.  Id.

**B.   The ALJ's Evaluation of the Opinions of the Treating Physicians**

Plaintiff asserts that the ALJ failed to properly evaluate the opinions of plaintiff's four treating physicians, all of whom opined that plaintiff was disabled.  Instead, the ALJ adopted the opinions of two consultative examiners.  Plaintiff contends that the ALJ's failure to credit the opinions of the treating physicians constitutes error.

Four treating sources opined that plaintiff was disabled and incapable of work.  On March 6, 1999, Wassin Zaky, M.D., completed a Medical Provider Evaluation form, whereby he found plaintiff "permanently and totally disabled and unable to work in the future." (AR at 239).  On August 14, 2000, March 18, 2002, and March 1, 2004, Augusto Rojas, M.D., also completed Medical Provider Evaluations, whereby he found plaintiff to be "permanently and totally disabled and unable to work in the future." (AR at 236, 234, 490, 488).  On September 6, 2002, Murray Salk, M.D., completed a Multiple Impairments Questionnaire whereby he found plaintiff's prognosis to be poor, her pain to be constant, and her fatigue and pain to be moderately severe. (AR at 265-72).  Dr. Salk also found that plaintiff could sit and walk for no more than an hour per day and lift or carry no more than five pounds occasionally. (AR at 267-68).  Finally, on or about March 25,

1    2002, Erin F. De Maio, M.D., completed a Medical Provider Evaluation

2    form and found plaintiff to be "permanently and totally disabled and

3    unable to work in the future." (AR at 441).   Dr. De Maio, however,

4    completed a Multiple Impairments Questionnaire on October 4, 2005, in

5    which she found plaintiff's conditions to be well-controlled and

6    plaintiff to be generally capable of work with some limitations.  (AR

7    at 493-500).   Specifically, Dr. De Maio found plaintiff capable of

8    sitting for four hours and standing or walking for two hours with

9    breaks in an eight-hour workday.  (AR at 495).   Dr. De Maio further

10   found plaintiff capable of lifting or carrying up to ten pounds

11   frequently and up to 20 pounds occasionally.  (AR at 496).

12       Instead, the ALJ relied on the assessments of two orthopedic

13   consultative examiners who examined plaintiff.  On October 27, 2001,

14   Tarek Bittar, M.D., performed an Orthopedic Consultation of plaintiff

15   and diagnosed her with degenerative disc disease lumbar spine with

16   possible foraminal stenosis and radiculopathy symptoms.  (AR at 185-

17   90).   Overall, Dr. Bittar opined that plaintiff could lift 25 pounds

18   occasionally and ten pounds frequently, stand and walk two hours in an

19   eight-hour workday with normal breaks, and sit with no restrictions.

20   (AR at 189).   On June 6, 2005, Lloyd Tom, M.D., completed an

21   Orthopedic Evaluation of plaintiff and diagnosed her with neck and

22   lumbar radiculopathy.  (AR at 447-51).   Dr. Tom found plaintiff

23   capable of light physical activity, with the capability of lifting 40

24   pounds occasionally and less than 20 pounds frequently; standing

25   and/or walking for six hours in an eight-hour workday; and sitting

26   without restrictions.  (AR at 451).   In his decision, the ALJ gave the

27   most weight to the opinion of Dr. Tom.  (AR at 388).

28   ///

An ALJ should place greater weight on a treating physician's opinion than that of an examining and non-examining physician.  See Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995)("It is clear that more weight is given to a treating physician's opinion than to the opinion of a non-treating physician because a treating physician 'is employed to cure and has a greater opportunity to know and observe the patient as an individual.'")(quoting Magallenes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989); see also Spraque v. Bowen, 812 F.2d 1226, 1230 (9th Cir. 1987).  While an ALJ may disregard a treating physician's opinion even when no other medical evidence contradicts that opinion, the ALJ must present clear and convincing reasons for doing so.  See Andrews, 53 F.3d at 1041; see also Montijo v. Secretary of Health and Human Services, 729 F.2d 599, 601 (9th Cir. 1984).  When the treating doctor's opinion is contradicted by another doctor, the Commissioner may not reject the treating physician's opinion without providing specific and legitimate reasons supported by substantial evidence in the record.  Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995); see also Saelee v. Chater, 94 F.3d 520 (9th Cir. 1996).  Specific and legitimate reasons can be set forth by a "detailed and thorough summary of the facts and conflicting clinical evidence, stating [the ALJ's] interpretation thereof, and making findings." Reddick v. Chater, 157 F.3d 715, 725 (9th Cir. 1998).  More than just rendering conclusions, the ALJ must set forth interpretations and explain why his interpretations, rather than the physician's, are correct.  Reddick, 157 F.3d at 725.

The ALJ rejected the treating physicians' opinions on several grounds.  With respect to Dr. Zaky, the ALJ rejected his assessment because Dr. Zaky is not an orthopedist and his assessments were not

supported by the objective findings or treatment records. (AR at 387). With respect to Dr. Rojas, the ALJ rejected the physician's opinion because Dr. Rojas is not an orthopedist, his assessment was contradicted by normal x-ray results and range of motion testing, and his assessment of severe hypertension was contradicted by treatment records showing that the hypertension was adequately controlled. (AR at 387). With respect to Dr. Salk, the ALJ rejected his opinion on the grounds that Dr. Salk is not an orthopedist, he did not provide any treatment records, he did not identify any clinical findings to support his diagnosis, and the medical evidence did not support his findings. (AR at 387-88). Finally, with respect to Dr. De Maio, the ALJ rejected her opinion because she is not an orthopedist, her treatment records did not support her finding that plaintiff suffered from severe arthritis, clinical findings did not support her findings, and her limitations were inconsistent with the findings from imaging studies. (Id.).

### 1. Dr. Zaky

The ALJ rejected Dr. Zaky's assessment that plaintiff is "permanently and totally disabled and unable to work in the future" because he is not an orthopedist, his assessments were not supported by the objective findings or treatment records, and he did not state why he found plaintiff disabled. (AR at 387).

#### a. Not an Orthopedist

In evaluating opinion evidence, a physician's area of specialization is a valid consideration. The Commissioner may "generally give more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist." 20 C.F.R. §

1 │ 404.1527(d)(5).

2 │      Some courts, however, have rejected the notion that a
3 │ specialist's opinion should be given greater weight than a generalist
4 │ who treated and examined the claimant in instances where the
5 │ generalist practices in the area of specialty.  In Sprague v. Bowen,
6 │ the court found that a treating physician's opinion was medically
7 │ acceptable notwithstanding his lack of specific expertise in
8 │ psychiatry because primary care physicians "identify and treat the
9 │ majority of Americans' psychiatric disorders."  812 F.2d 1126, 1232
10 │ (9th Cir. 1987).  The Sprague court concluded that a duly licensed,
11 │ primary care physician can practice and render psychiatric services
12 │ and give a qualified opinion as to how the claimant's mental state
13 │ impacted her physical disability.  Id. (citations omitted).
14 │ Similarly, in Lester, the court held that the ALJ could not disregard
15 │ the treating physician's opinion regarding the claimant's mental
16 │ functioning solely because the treating physician was not a mental
17 │ health expert.  81 F.3d at 833.  The Lester court found that the
18 │ treating physician, who specialized in treating chronic pain, provided
19 │ treatment for the claimant's psychiatric impairment and his opinion
20 │ constituted competent psychiatric evidence, notwithstanding the fact
21 │ that he was not a board certified psychiatrist.  Id.

22 │      Here, the ALJ rejected Dr. Zaky's assessment, in part, because he
23 │ is not an orthopedist.  (AR at 387).  In his opinion, the ALJ gave
24 │ the most weight to Dr. Tom, an orthopedist.  (AR at 388).  As an
25 │ emergency medicine practitioner, however, Dr. Zaky's practice also

10

1    encompasses back and neck pain.[2]  The Court is not persuaded that a

2    one-time examining orthopedist would have significantly more expertise

3    in these areas than an emergency medicine practitioner who has been

4    treating plaintiff on nearly a monthly basis from June 30, 1996

5    through March 10, 1998.  (AR at 239-53, 273-375).  Thus, while the ALJ

6    may, under certain circumstances, give more weight to the opinion of

7    specialists over a treating physician, in this case, the evidence is

8    not sufficient to support the ALJ's decision to reject Dr. Zaky's

9    opinion.

10                **b.   Objective Findings or Treatment Records**

11       The ALJ also rejected Dr. Zaky's opinion of disability based on

12   the lack of objective findings or treatment records to support his

13   opinion.  (AR at 387).  The ALJ noted that Dr. Zaky failed to state

14   why he found plaintiff disabled.  (Id.).

15       The Ninth Circuit permits an ALJ to rely on an absence of

16   objective findings to reject a treating physician's opinion.  Johnson

17   v. Shalala, 60 F.3d 1428, 1432 (9th Cir. 1995) (inadequate clinical

18   findings provide specific and legitimate basis for ALJ to reject

19   treating physician's opinion); Buckhart v. Bowen, 856 F.2d 1335, 1339

20   _____

21       [2] Emergency medicine is defined by the American College of
     Emergency Physicians as "the medical specialty with the principal
22   mission of evaluating, managing, treating and preventing
     unexpected illness and injury.  It encompasses a unique body of
23   knowledge, reflected in the "Model of the Clinical Practice of
     Emergency Medicine." (footnote omitted).  Clinical emergency
24   medicine may be practiced in emergency departments, urgent care
     clinics, and other settings.  The clinical practice of emergency
25   medicine encompasses the initial evaluation, treatment, and
     disposition of any person at any time for any symptom, event, or
26   disorder deemed by the person - or someone acting on his or her
     behalf - to require expeditious medical, surgical, or psychiatric
27   attention." http://www.acep.org/webportal/PracticeResources/
     PolicyStatements/pracmgt/DefinitionEM.htm.

28

                                     11

1  (9th Cir. 1988) (proper to disregard uncontroverted treating
2  physician's opinion when he fails to provide objective descriptions of
3  medical findings); cf. Embrey v. Bowen, 849 F.2d 418, 421 (9th Cir.
4  1988) (improper to reject treating physician's opinion where he
5  provided at least some objective observations and laboratory and x-ray
6  testing in addition to subjective opinions).

7      Nevertheless, an ALJ may not reject a treating physician's
8  opinion for lacking supporting clinical data or explanation without
9  first re-contacting the physician to determine whether such supporting
10 clinical data exists.   In particular, 20 C.F.R. 404.1512(e)(1), in
11 pertinent part, states:

12          We will first recontact your treating physician or
13          psychologist or other medical source to determine
14          whether the additional information we need is
15          readily available.  We will seek additional
16          evidence or clarification from your medical source
17          when the report from your medical source contains
18          a conflict or ambiguity that must be resolved, the
19          report does not contain all the necessary
20          information, or does not appear to be based on
21          medically acceptable clinical and laboratory
22          diagnostic techniques.

23 20 C.F.R. 404.1512(e)(1) (emphasis added).   Thus, unless the ALJ
24 complies with his duty to re-contact the treating physician, the ALJ
25 cannot validly cite a lack of clinical data or explanation to reject
26 the treating physician's opinion.   See Cleveland v. Apfel, 99 F. Supp.
27 2d 374, 380 (S.D.N.Y. 2000) (remanding case to ALJ for failure to re-
28 contact treating physician before rejecting opinion and stating, "When

12

the opinion submitted by a treating physician is not adequately
supported by clinical findings, the ALJ must attempt, <u>sua sponte</u>, to
develop the record further by contacting the treating physician to
determine whether the required information is available"); <u>see also</u>
<u>Corey v. Barnhart</u>, 2002 WL 663130, at *5 (S.D. Ind. March 14, 2002)
("The ALJ discredited Dr. Ciulla's opinion because of the lack of
objective findings, and there is no indication in the record that the
ALJ recontacted Dr. Ciulla to find out whether he had any findings or
other information to support his opinion.  The ALJ's failure to do so
was error.").

  Here, there is no evidence, nor does the Commissioner contend,
that the ALJ attempted to recontact Dr. Zaky regarding his limited
clinical findings.  As such, the ALJ erred in rejecting the treating
physician's opinion based on limited clinical findings and treatment
records without first recontacting Dr. Zaky.  Furthermore, treatment
notes from June 30, 1996 through March 10, 1998 indicate that Dr. Zaky
examined plaintiff frequently and rendered diagnoses that support
plaintiff's contention of disabling back pain.  (AR at 239-53, 273-
375).  Treatment records further indicate that Dr. Zaky conducted
clinical examinations of plaintiff's neck and back that support his
assessments.  (AR at 278, 285, 290, 292-93, 299, 301, 302, 307, 310,
316, 319, 326, 329, 333, 335-36, 339, 341-42, 347, 349-50, 353, 356,
364, 370, 374).

  The ALJ failed, in part, to give proper grounds for rejecting the
opinion of Dr. Zaky.  It is, however, within the ALJ's province to
reject Dr. Zaky's assessment in favor of Dr. Tom.  "[W]here the
opinion of the claimant's treating physician is contradicted, and the
opinion of a nontreating source is based on independent clinical

findings that differ from those of the treating physician, the opinion may itself be substantial evidence; it is then solely the province of the ALJ to resolve the conflict." Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995). A review of the evaluations of Drs. Tom and Bittar indicate that the physicians based their opinions on independent clinical findings. Dr. Tom performed an orthopedic examination, including measuring plaintiff's range of motion and performing a radiographic study. (AR at 447-51). Similarly, Dr. Bittar performed a physical examination, performed tests on plaintiff's range of motion, took measurements, and conducted a neurological exam. (AR at 186-89). Accordingly, it is solely within the province of the ALJ to resolve the conflicting opinions of the consultative examiners and the treating physicians regarding plaintiff's functional limitations. Thus, the ALJ did not err in rejecting the assessment of Dr. Zaky in favor of the opinions of the consultative examiners.[3]

**2.   Dr. Rojas**

The ALJ rejected Dr. Rojas' opinion because the physician is not an orthopedist, his assessment was contradicted by normal x-ray results and range of motion testing, and his assessment of severe

---

[3] Additionally, any failure by the ALJ to give proper grounds for rejecting the opinion of Dr. Zaky is harmless. See Brawner v. Secretary of Health and Human Services, 839 F.2d 432, 434 (9th Cir. 1988)(applying harmless error standard of review to ALJ's decision and refusing to remand where error was harmless); Curry v. Sullivan, 925 F.2d 1127, 1129 (9th Cir. 1991)(harmless error rules applies to review of administrative decisions relating to disability); Booz v. Secretary of Health and Human Services, 734 F.2d 1378, 1380-81 (9th Cir. 1984)(adopting rule that evidence is sufficiently material to require a remand "only where there is a reasonable possibility that the new evidence would have changed the outcome of the Secretary's determination had it been before him").

1 hypertension was contradicted by treatment records showing that the
2 hypertension was adequately controlled. (AR at 387).

3         **a.   Not an Orthopedist**

4     Similar to Dr. Zaky, the ALJ rejected Dr. Rojas' opinion, in
5 part, because he is not an orthopedist. (Id.). As previously noted,
6 while the Commissioner may give more weight to the opinion of a
7 specialist, some courts have rejected the notion that a specialist's
8 opinion should be given greater weight than a generalist who treated
9 and examined the claimant in instances where the generalist practices
10 in the area of specialty. Sprague, 812 F.2d at 1232; Lester, 81 F.3d
11 at 833.

12     As a family practice physician, Dr. Rojas' practice also
13 encompasses back and neck pain.[4] Unlike Dr. Zaky, however, Dr. Rojas
14 appears to only have treated plaintiff three times; that is, on August
15 14, 2000, March 18, 2002, and March 1, 2004. (AR at 234, 236, 488-
16 91). Given Dr. Rojas' lack of a consistent and ongoing treating
17 relationship with plaintiff, the Court finds that the ALJ properly
18 gave more weight to the opinion of the specialists over Dr. Rojas's
19 opinion.

20         **b.   Assessment Contradicted by Clinical Findings**

21     The ALJ also rejected Dr. Rojas' opinion of disability on the
22 basis that his disability assessment was contradicted by the clinical
23 findings. First, Dr. Rojas found plaintiff disabled due to chronic
24 lumbalgia, lumbar disc disease, and lumbar radiculitis. (AR at 387).

25 _____

26     [4] Family practice is "a specialty of medicine in which the
physician takes responsibility for the health and medical care of
27 all members of a family group, regardless of age or gender, but
usually does limited amounts of obstetrics and surgery."
28 Stedman's Medical Dictionary, 27th ed.

As noted by the ALJ, however, x-rays and an MRI of the lumbar spine, however, were normal. (AR at 210-11, 161-62). Second, the ALJ reasoned that a consultative examination showed a normal range of motion of the lumbar spine. (AR at 387). Indeed, Dr. Tom examined plaintiff and found her to have a normal range of motion in her back. (AR at 448). Third, the ALJ correctly noted that plaintiff did not use an assistive device and that no evidence existed indicating that one was medically necessary. (AR at 387). Finally, the ALJ noted that while Dr. Rojas found plaintiff disabled partly due to her hypertension, treatment records showed that her hypertension was adequately controlled with no evidence of end organ damage. (AR at 487, 493). Given these detailed reasons, the Court finds that the ALJ gave specific and legitimate reasons for rejecting the opinion of Dr. Rojas on the basis of the assessment's contradiction with the clinical findings.

### 3. Dr. Salk

With respect to Dr. Salk, the ALJ rejected his opinion on the grounds that Dr. Salk is not an orthopedist, he did not provide any treatment records, he did not identify any clinical findings to support his diagnosis, and the medical evidence did not support his findings. (AR at 387-88).

#### a. Not an Orthopedist

Similar to Dr. Zaky and Dr. Rojas, the ALJ rejected Dr. Salk's opinion, in part, because he is not an orthopedist. (AR at 387). As discussed earlier, while the Commissioner may give more weight to the opinion of a specialist, some courts have rejected the notion that a specialist's opinion should be given greater weight than a generalist who treated and examined the claimant in instances where the

generalist practices in the area of specialty.  <u>Sprague</u>, 812 F.2d at 1232;  <u>Lester</u>, 81 F.3d at 833.

Dr. Salk's specialization in family practice encompasses back and neck pain.  Unlike Dr. Rojas, however, Dr. Salk did not appear to have an ongoing treating relationship with plaintiff.  In fact, the records indicate only one examination by Dr. Salk on September 6, 2002.  (AR at 265-72).  Given the lack of multiple visits or any type of treating relationship, the Court finds that the ALJ properly rejected Dr. Salk's opinion.

### b.  Lack of Clinical Findings

The ALJ also rejected Dr. Salk's opinion of disability on the bases that the physician did not provide any treatment records, did not identify any clinical findings to support his diagnosis, and made findings that were not supported by the medical evidence.  (AR at 388).  While Dr. Salk's assessment lacks objective findings or treatment records, the ALJ had a duty to re-contact the treating physician to obtain supporting evidence when citing to a lack of clinical data or explanation as a basis for rejecting the treating physician's opinion.  <u>See Cleveland</u>, 99 F. Supp. 2d at 380; <u>Corey</u> 2002 WL 663130, at *5.  Here, the ALJ failed to do so.  As such, the Court finds that the lack of treatment records and clinical findings was not a specific and legitimate reason for rejecting the opinion of Dr. Salk.

Overall, the ALJ cited one specific and legitimate reason for rejecting Dr. Salk's opinion, namely that he was not a specialist.  As such, the ALJ did not err in rejecting Dr. Salk's disability assessment.

///

**4.   Dr. De Maio**

With respect to Dr. De Maio, the ALJ rejected her opinion because she is not an orthopedist, her treatment records did not support her finding that plaintiff suffered from severe arthritis, clinical findings did not support her findings, and her limitations were inconsistent with the findings from imaging studies. (AR at 387-88).

**a.   Not an Orthopedist**

The ALJ rejected Dr. De Maio's opinion, in part, because she is not an orthopedist.  (AR at 387).  As previously noted, while the Commissioner may give more weight to the opinion of a specialist, some courts have rejected the notion that a specialist's opinion should be given greater weight than a generalist who treated and examined the claimant in instances where the generalist practices in the area of specialty.  Sprague, 812 F.2d at 1232; Lester, 81 F.3d at 833.

As noted above in relation to other physicians, Dr. De Maio's specialization in family practice encompasses back and neck pain. Records, moreover, indicate that Dr. De Maio treated plaintiff no less than fifteen occasions from December 3, 2004 through October 4, 2005. (AR at 441, 452-87, 493-500).  Thus, Dr. De Maio had an ongoing treating relationship with plaintiff.  Given the frequency of her examinations of plaintiff, the evidence is not sufficient to support the ALJ's decision to reject Dr. De Maio's opinion on the basis of her medical specialty.

**b.   Lack of Clinical Findings**

The ALJ also rejected Dr. De Maio's opinion of disability on the bases that her treatment records did not support her finding that plaintiff suffered from severe arthritis, clinical findings did not

support her findings, and her limitations were inconsistent with the findings from imaging studies. (AR at 388). Specifically, the ALJ noted that Dr. De Maio found plaintiff disabled since May of 1996 due to arthritis, degenerative disc disease, diabetes, anxiety, and hypertension. (Id.). As the ALJ noted, Dr. De Maio's treatment records show that plaintiff's diabetes, hypertension, and depression were controlled by medication. (AR at 457, 465, 468, 470, 474, 475, 481, 493). The ALJ also noted that examinations showed no abnormalities of the back or extremities and no neurological deficits. (AR at 388). Indeed, Dr. Tom's examination of plaintiff showed that plaintiff had a normal range of motion in her back and extremities and no neurological defects. (AR at 448-50). Finally, the ALJ noted that Dr. De Maio's assessment lacked current clinical findings other than paraspinous muscle tenderness in the lumbar area. (AR at 493).

As previously noted, however, the ALJ had a duty to re-contact the treating physician to obtain supporting evidence when citing to a lack of clinical data or explanation as a basis for rejecting the treating physician's opinion. See Cleveland, 99 F. Supp. 2d at 380; Corey 2002 WL 663130, at *5. 20 C.F.R. 404.1512(e)(1) also requires the ALJ to recontact Dr. De Maio when conflict or ambiguity exists, such as the physician's statements that plaintiff's severe impairments are well-controlled by medication. Here, the ALJ failed to do so. As such, the Court finds that the lack of treatment records and clinical findings was not a specific and legitimate reason for rejecting the opinion of Dr. De Maio.

Overall, the ALJ failed to cite a specific and legitimate reason for rejecting Dr. De Maio's disability assessment. As previously

1  noted, it is within the ALJ's province to reject Dr. De Maio's

2  assessment in favor of Dr. Tom, as Dr. Tom based his assessment on

3  independent clinical findings. <u>Andrews</u>, 53 F.3d at 1041. As such,

4  any failure by the ALJ to properly reject the opinion of Dr. De Maio

5  is harmless.

6  **C.   Plaintiff's Credibility**

7      Plaintiff objects to the ALJ's determination that plaintiff

8  lacked credibility.[5] Whenever an ALJ's disbelief of a claimant's

9  testimony is a critical factor in a decision to deny benefits, as it

10 is here, the ALJ must make explicit credibility findings, supported by

11 "specific, cogent reasons for the disbelief." <u>Rashad v. Sullivan</u>, 903

12 F.2d 1229, 1231 (9th Cir. 1990). An ALJ's reasons for discrediting a

13 claimant's testimony must be sufficiently specific for the reviewing

14 court to assess whether the decision was impermissibly arbitrary.

15 <u>Bunnell v. Sullivan</u>, 947 F.2d 341, 345-46 (9th Cir. 1991).

16     At the December 3, 2002 hearing, plaintiff testified that she is

17 in pain "all the time, when I'm sitting, when I'm standing up, when

18 I'm on bed [sic]" and that the pain was getting worse. (AR at 71).

19 Plaintiff further testified that she cannot stand for more than an

20 hour, sit for more than an hour, or lift more than two pounds. (AR at

21 75). The ALJ rejected plaintiff's subjective complaints as out of

22 proportion with the objective findings, noting the following: 1) there

23 was no evidence of disuse muscle atrophy, 2) plaintiff had only

24

25     [5] The Court consolidates plaintiff's second claim that the
26 ALJ failed to properly evaluate plaintiff's subjective complaints
   and third claim that the ALJ failed to properly evaluate
27 plaintiff's pain syndrome and exertional limitations relating to
   her residual functional capacity in this section relating to
28 plaintiff's credibility.

routine office visits, 3) significant gaps existed in her treatment, 4) plaintiff was not medically required to use an assisted device, and 5) plaintiff was treated conservatively with medications. (AR at 389). In the Joint Stipulation, plaintiff objects to the ALJ's rejection of her subjective complaints as out of proportion with the objective findings, stating that plaintiff was only required to show that the impairment could reasonably produce the pain complained of. As discussed below, the Court finds that the ALJ's reasons for rejecting plaintiff's credibility were clear and convincing.

The ALJ cited to a lack of objective medical evidence in his decision to reject plaintiff's credibility regarding her subjective complaints. An ALJ, however, cannot rely on an absence of disability findings to reject a plaintiff's credibility. A claimant need not produce evidence of pain other than his own subjective testimony. Smolen v. Chater, 80 F.3d 1273, 1282 (9th Cir. 1996) ("The claimant need not produce objective medical evidence of the pain or fatigue itself, or the severity thereof."). Nor must a claimant present objective medical evidence of a causal relationship between the impairment and the type of symptom. See Smolen, 80 F.3d at 1282; see also Johnson v. Shalala, 60 F.3d 1428, 1433 (9th Cir. 1995) ("[O]nce an impairment is medically established, the ALJ cannot require medical support to prove the severity of the pain."). Rather, the claimant need only "produce objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." Bunnell, 947 F.2d at 344 (internal quotations omitted). This approach reflects the Ninth Circuit's recognition of the "highly subjective and idiosyncratic nature of pain

and other such symptoms," <u>Smolen</u>, 80 F.3d at 1282, such that "[t]he amount of pain caused by a given physical impairment can vary greatly from individual to individual." <u>Id.</u> (<u>internal quotations omitted</u>).

Put another way, "[a]n individual's statements about the intensity and persistence of pain or other symptoms or about the effect the symptoms have on his or her ability to work may not be disregarded solely because they are not substantiated by objective medical evidence." Social Security Ruling ("SSR") 96-7p.[6]  Instead, a claimant must demonstrate only two things:  "(1) [he] must produce objective medical evidence of an impairment or impairments; and (2) [he] must show that the impairment or combination of impairments could reasonably be expected to (not that it did in fact) produce some degree of symptom."  SSR 96-7p; <u>see also</u> SSR 96-3p.

In this case, the ALJ found that plaintiff's subjective complaints and limitations were out of proportion with the objective findings in the record.  (AR at 389).  Once the claimant produces medical evidence of an underlying impairment, the Commissioner may not discredit the claimant's testimony as to subjective symptoms merely because they are unsupported by objective evidence.  <u>Lester</u>, 81 F.3d at 834.  Here, the ALJ explicitly determined that plaintiff's status post left clavicle fracture and history of low back pain and neck pain constituted severe impairments.  (AR at 391).  Thus, unless there is affirmative evidence showing that the claimant is malingering, the

---

[6] Social Security Rulings are issued by the Commissioner to clarify the Commissioner's regulations and policies.  <u>Bunnell v. Sullivan</u>, 947 F.2d 341, 346 n.3 (9th Cir. 1991).  Although they do not have the force of law, they are, nevertheless given deference "unless they are plainly erroneous or inconsistent with the Act or regulations."  <u>Han v. Bowen</u>, 882 F.2d 1453, 1457 (9th Cir. 1989).

Commissioner's reasons for rejecting the claimant's testimony must be "clear and convincing."  Id.   General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints.  Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993); Varney v. Secretary of Health and Human Services, 846 F.2d 581, 584 (9th Cir. 1988).

Here, the ALJ gave numerous reasons for rejecting plaintiff's testimony as out of proportion with the objective findings.  First, the ALJ found that although plaintiff testified to disabling pain, plaintiff showed no evidence of disuse muscle atrophy that would be associated with inactivity and inability to function.  (AR at 389). The ALJ also noted gaps in plaintiff's treating records from February 1998 until July 21, 2000 and May 2002 until December 2004.  (Id.). The ALJ found that there was no evidence that an assistive device was medically necessary, and no doctor prescribed one for plaintiff. Additionally, the ALJ noted that there was no evidence that plaintiff currently used any such device.  (Id.).  Finally, the ALJ noted that plaintiff's back pain was treated conservatively with medications and that lumbar epidural injections and surgery were not necessary.  (AR at 389).

## 1. Gaps in Treatment

The ALJ noted gaps in plaintiff's treating records from February 1998 until July 21, 2000 and May 2002 until December 2004.[7] An ALJ may cite a claimant's failure to seek treatment as a legitimate reason to

---

[7]   The Court notes that records indicate that Dr. Salk examined plaintiff on September 6, 2002 and Dr. Rojas completed a Medical Provider Evaluation form on March 1, 2004.  (AR at 265-72, 234).

discredit the claimant's testimony.  See Fair v. Bowen, 885 F.2d at 603 (listing proper reasons to discredit claimant's testimony and stating, "Another such form of evidence is an unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment"); see also Smolen, 80 F.3d at 1284 (ALJ may rely on claimant's "unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment").

Here, there is no explanation as to why plaintiff did not seek treatment during the two periods, lasting approximately two years each.  Such failure to seek treatment, given her allegations of disabling pain, constitutes an adequate ground for rejecting plaintiff's credibility.

**2. Assistive Device**

ALJ reasoned that no doctor prescribed plaintiff an assistive device for walking, nor was there any evidence that plaintiff currently used any assistive device. (Id.). At the December 3, 2002 hearing, plaintiff testified that she uses a cane "when [she] can't put up with more pain in [her left] leg." (AR at 72). Plaintiff did not testify at the November 3, 2005 hearing. (AR at 502). The ALJ, however, failed to address plaintiff's testimony, which contradicts the ALJ's finding that there was no evidence that plaintiff was currently using an assistive device.

**3. Conservative Treatment With Medications**

Finally, the ALJ cites to plaintiff's conservative medical treatment as a basis to reject plaintiff's subjective complaints regarding her disabled status. (AR at 389). Specifically, the ALJ notes that plaintiff's subjective complaints of disabling impairments

24

1  were not consistent with routine office visits and treatment with

2  medications.  (Id.).  As discussed below, the Court agrees.

3      An ALJ may rely on a plaintiff's conservative treatment regimen

4  to reject a plaintiff's testimony of disabling limitations or

5  disabling pain.  Fair v. Bowen, 885 F.2d at 604.  For example, in Fair

6  v. Bowen, the Ninth Circuit affirmed an ALJ's credibility decision

7  where the ALJ stated, among other things, that the claimant received

8  only minimal conservative treatment for his various complaints.  Id.

9  But the Court also noted that a plaintiff could overcome an ALJ's

10 credibility decision by offering a credible explanation about the lack

11 of more serious treatment.  See id. ("While such reasoning may not

12 hold up in all cases (there may be claimants with good reasons for not

13 seeking treatment and credible explanations for their ability to work

14 inside but not outside the home), it is sufficient here, as Fair has

15 not put forward any evidence that reconciles the inconsistency between

16 his words and his actions."); see also Smolen, 80 F.3d at 1284

17 (evidence of good reason existed where claimant had no insurance and

18 could not afford treatment); see also 20 C.F.R. § 404.1530 (listing

19 acceptable reasons for failure to follow prescribed treatment).

20     First, plaintiff reported that she took a variety of medications

21 in order to control her pain.  Records indicate that such medications

22 included Ibuprofen,[8] Acetaminophen-Codeine[9], Propoxyphene Napsylate,[10]

23 _____

24     [8]  Ibuprofen is a nonsteroidal anti-inflammatory drug
   (NSAID), which relieves pain and swelling (inflammation). It is

25 used to treat headaches, muscle aches, backaches, dental pain,
   menstrual cramps, arthritis, or athletic injuries. This

26 medication is also used to reduce fever and to relieve minor
   aches and pain due to the common cold or flu."

27 http://my.webmd.com/medical_information/drug_and_herb/default.htm
   (search "Find A Drug, By Name" for "Ibuprofen"; follow "Ibuprofen

28                                                    (continued...)

                                    25

1  Diclofenac,[11]  Carisoprodol,[12]  Celebrex,[13]  Soma,[14]    Tylenol,[15]   and

2

        [8](...continued)

3  Oral" hyperlink; then follow "Ibuprofen - Oral" hyperlink).
   Plaintiff also reported taking Motrin, which is a brand name of

4  Ibuprofen.

5     [9]  "This medication is a combination of a narcotic (codeine)

6  and a non-narcotic (acetaminophen) used to relieve mild to
   moderate pain."  http://my.webmd.com/medical_information/

7  drug_and_herb/default.htm (search "Find A Drug, By Name" for
   "Acetaminophen-Codeine").

8
      [10]  "This medication is used to treat mild-to-moderate pain.

9  It acts on certain centers in the brain to give you pain relief.
   This medication is a narcotic pain reliever (opiate-type)."

10 http://my.webmd.com/medical_information/drug_and_herb/default.htm
   (search "Find A Drug, By Name" for Propoxyphene Napsylate";

11 follow "Propoxyphene Napsylate Oral" hyperlink; then follow
   "Uses" tab).

12
      [11]  "Diclofenac is used to relieve pain and swelling

13 (inflammation) from various mild to moderate painful conditions.
   It is used to treat muscle aches, backaches, dental pain,

14 menstrual cramps, and sports injuries. It also reduces pain,
   swelling, and joint stiffness caused by arthritis."

15 http://my.webmd.com/medical_information/drug_and_herb/default.htm
   (search "Find A Drug, By Name" for "Diclofenac"; follow

16 "Diclofenac Potassium Oral" hyperlink; then follow "Uses" tab).

17
      [12]  "This medication is used to treat pain and discomfort

18 from muscle injuries such as strains, sprains, and spasms.... It
   works on the nerves to relieve muscle pain. It may also relieve

19 pain by calming [the] nervous system."
   http://my.webmd.com/medical_information/drug_and_herb/default.htm

20 (search "Find A Drug, By Name" for "Carisoprodol"; the follow
   "Cardisoprodol Oral" hyperlink).

21
      [13]  "This medication is used to treat pain and discomfort

22 from muscle injuries such as strains, sprains, and spasms. It is
   usually used along with rest, physical therapy, and other

23 treatments (e.g., anti-inflammatory medication)."
   http://my.webmd.com/medical_information/drug_and_herb/default.htm

24 (search "Find A Drug, By Name" for "Celebrex").

25
      [14]  "This medication is used to treat pain and discomfort

26 from muscle injuries such as strains, sprains, and spasms.  It is
   usually used along with rest, physical therapy, and other

27 treatments (e.g., anti-inflammatory medication)."
   http://my.webmd.com/medical_information/drug_and_herb/default.htm

28
                                                (continued...)

1  Tramadol.[16]   (AR at 112, 137, 141, 186, 433, 439).   Most recently

2  plaintiff reported taking Ibuprofen and Tramadol.  (AR at 433).

3      An ALJ may reject a claimant's allegations of extreme pain where

4  the patient uses only mild pain medication.  See Orteza v. Shalala, 50

5  F.3d 748, 750 (9th Cir. 1994) (affirming ALJ's decision to reject

6  patient's credibility and noting that plaintiff "has not required

7  prescription pain medication"); see also Tidwell v. Apfel, 161 F.3d

8  599, 602 (9th Cir. 1998) (rejecting plaintiff's credibility and noting

9  pain did not require prescription medications); Ruiz v. Apfel, 24 F.

10 Supp. 2d 1045, 1048 (C.D. Cal. 1998) (rejecting plaintiff's

11 credibility and stating, "More particularly, [the ALJ] remarked that

12 [plaintiff] had not been prescribed narcotic pain medication, as would

13 be expected if she suffered from intense, chronic pain."); Matthews v.

14 Shalala, 10 F.3d 678, 679-680 (9th Cir. 1993) (permissible credibility

15 factors include limited treatment and minimal use of medications).

16 Here, plaintiff's treatment records indicate that she has taken

17 prescription strength and narcotic pain medications to relieve her

18 pain.  Accordingly, substantial evidence does not support the ALJ's

19 decision to reject plaintiff's credibility based on her conservative

20 ─────────────────

21     [14](...continued)
   (search "Find A Drug, By Name" for "Soma"; then follow "Soma

22 Oral" hyperlink).

23     [15]  Tylenol is used "to relieve mild to moderate pain and to
   reduce fever."  http://my.webmd.com/medical_information/

24 drug_and_herb/default.htm (search "Find A Drug, By Name" for
   "Tylenol"; then follow "Tylenol Oral" hyperlink).

25
      [16]  "This medication is used to relieve moderate pain. It is
26 similar to narcotic pain medications. It works on certain nerves
   in the brain that control how you experience pain."
27 http://my.webmd.com/medical_information/drug_and_herb/default.htm
   (search "Find A Drug, By Name" for "Tramadol"; follow "Tramadol
28 Oral" hyperlink).

medical treatment.

Second, the ALJ also stated that there was no evidence that plaintiff required more aggressive treatment and that her care consisted of "routine office visits." (AR at 389). Records confirm the ALJ's contention that plaintiff did not require surgery or epidural injections for her pain, but rather she sought treatment from routine visits to her physicians. Additionally, as previously noted, significant gaps existed in plaintiff's treatment for two periods, each lasting approximately two years. Thus, the Court finds that the ALJ's rejection of plaintiff's credibility on the basis of her conservative treatment consisting of office visits to physicians withstands scrutiny.

Overall, the Court finds no merit to plaintiff's contention that the ALJ failed to properly evaluate her pain syndrome and exertional limitations. Rather, the ALJ provided sufficient reasons for rejecting plaintiff's credibility, namely, the absence of muscle atrophy, the gaps in plaintiff's treatment history, and her routine office visits to her physicians.

**D.   Plaintiff's Use of Medications and Their Side Effects**

In her fourth claim, plaintiff contends that the ALJ failed to properly evaluate plaintiff's use of medication and their side effects. Specifically, plaintiff testified at the December 3, 2002 hearing that her medication makes her feel tired sometimes and dizzy. (AR at 74). Plaintiff also reported to her physician that she felt "sleepy all the time" due to her medications. (AR at 470). Plaintiff contends that the ALJ's failure to evaluate these statements constitutes error.

While the record contains instances where plaintiff reported side

effects from her medications, the ALJ declined to assess greater limitations or total disability in his decision because he found plaintiff's complaints not fully credible. (AR at 389). As discussed at length in the prior section, the Court found that the ALJ made proper credibility determinations when rejecting her subjective complaints. As such, the Court finds that any error in the ALJ's failure to evaluate plaintiff's use of medications and their side effects is harmless.

**E.   Consideration of the Combined Impact of All Impairments**

In her fifth claim, plaintiff contends that the ALJ failed to consider the combined impact of all her exertional and non-exertional impairments on her occupational base. While plaintiff does not state specifically which impairments the ALJ failed to consider, she refers to the medical reports of Drs. Rojas and Salk.

Dr. Rojas diagnosed plaintiff with chronic lumbalgia, lumbar disc disease, and lumbar radiculitis, but did not mention any mental impairments. (AR at 234, 236, 488, 491).   The ALJ rejected Dr. Rojas' disability assessment based on chronic lumbalgia, lumbar disc disease, and lumbar radiculitis because x-rays and an MRI of the lumbar spine were normal. (AR at 387).   In a prior section, the Court found this contradiction with the clinical findings to be a specific and legitimate reasons for rejecting the opinion of Dr. Rojas.

Dr. Salk, in his assessment, Dr. Salk diagnosed plaintiff with osteoarthritis, osteoporosis, and past clavicle fracture. (AR at 265).   Dr. Salk also found that plaintiff's continuous pain could cause emotional stress that "probably" contributes to the severity of her symptoms and functional limitations. (AR at 270).   In his

1  decision, the ALJ rejected the opinion of Dr. Salk because he had no

2  treatment records or clinical findings to support his diagnosis and

3  his findings were contradicted by the objective evidence. (AR at

4  388).   Additionally, the ALJ noted that plaintiff had not been

5  assessed with mental limitations or referred to a mental health

6  professional for testing. (AR at 389).

7      According to plaintiff, the ALJ failed to evaluate the impact of

8  all her impairments on her functional capacity.  The Commissioner's

9  Listing of Impairments sets forth certain impairments that are

10 presumed to be of sufficient severity to prevent the performance of

11 work. See 20 C.F.R. § 416.925(a).  If a claimant has an impairment or

12 combination of impairments medically equivalent to one in the Listing

13 of Impairments, disability is presumed and benefits are awarded. See

14 20 C.F.R. § 416.920(d).   A claimant has the burden of proving

15 disability, including disability based on the Listing of Impairments.

16 See Roberts v. Shalala, 66 F.3d 179, 182 (9th Cir.), cert. denied, 517

17 U.S. 1122 (1996). "For a claimant to show that his impairment matches

18 a listing, it must meet all of the specified medical criteria.   An

19 impairment that manifests only some of those criteria, no matter how

20 severely, does not qualify." Sullivan v. Zebley, 493 U.S. 521, 530,

21 (1990). "For a claimant to qualify for benefits by showing that his

22 unlisted impairment, or combination of impairments, is 'equivalent' to

23 a listed impairment, he must present medical findings equal in

24 severity to all the criteria for the one most similar listed

25 impairment. . . .  A claimant cannot qualify for benefits under the

26 'equivalence' step by showing that the overall functional impact of

27 his unlisted impairment or combination of impairments is as severe as

28 that of a listed impairment." Zebley 493 U.S. at 531.   Here,

1  plaintiff has not met her burden of showing that her impairments or

2  combination of impairments have met any listing.  Because plaintiff

3  has not met her burden, the Court finds that the ALJ committed no

4  error.

5  **F.   <u>Vocational Expert Testimony</u>**

6        In her final claim, plaintiff contends that the ALJ failed to

7  properly evaluate the testimony of the vocational expert.   In

8  particular, plaintiff contends that the ALJ failed to sufficiently

9  establish her residual functional capacity, namely all of the

10 exertional and non-exertional limitations that plaintiff alleged.

11 Plaintiff further contends that the ALJ's failure to include all these

12 impairments in the hypothetical to the vocational expert constitutes

13 error.  The Court disagrees.

14       At both hearings, the ALJ posed a hypothetical question to the

15 vocational experts.  At the hearing on December 3, 2002, the ALJ asked

16 Ms. Schneider what type of work a hypothetical person of plaintiff's

17 age and education could perform who is capable of performing light

18 work with mild pain, standing or walking four hours in an eight-hour

19 day, and sitting for six hours in an eight-hour day.  (AR at 79-80).

20 The ALJ also included slight limitations for overhead reaching with

21 her right arm.  (AR at 80).  Ms. Schneider testified that plaintiff

22 could perform the work of a cloth folder, thread cutter, sticker, and

23 table worker.  (<u>Id.</u>).   In his first decision, the ALJ adopted Ms.

24 Schneider's testimony and found that plaintiff retained the capacity

25 to perform the light work of cloth folding and thread cutting and the

26 sedentary work of sticker-flowers and table worker.  (AR at 21).   On

27 December 16, 2004, the Appeals Council remanded the case to the ALJ to

28 further evaluate plaintiff's subjective complaints, give further

31

consideration to the treating and examining source opinions, give further consideration to plaintiff's maximum residual functional capacity, and obtain supplemental evidence from a vocational expert to clarify the effect of the assessed limitations on plaintiff's occupational base. (AR at 408-10).

At the remanded hearing on November 3, 2005, the ALJ posed a slightly different hypothetical to the vocational expert, Ms. Metildi. (AR at 515). The ALJ asked Ms. Metildi what type of work a hypothetical person of plaintiff's age and education could perform who is capable of performing light work with mild pain, standing or walking six hours in an eight-hour day, sitting for six hours in an eight-hour day, and occasionally climbing, balancing, stooping, kneeling, crouching, and crawling. (AR at 515). Ms. Metildi testified that plaintiff could perform the work of an assembly press operator, inspector hand packager, small parts assembler, and housekeeper. (Id.). The ALJ adopted Ms. Metildi's testimony and found that plaintiff retained the capacity to perform work as an assembly press operator, as well as an inspector/hand packaging and small parts assembler. (AR at 391).

In order for the vocational expert's testimony to constitute substantial evidence, the hypothetical question posed must "consider all of the claimant's limitations." Andrews v. Shalala, 53 F.3d 1035, 1044 (9th Cir. 1995). The ALJ, however, need not include all of plaintiff's claimed impairments in his hypothetical. See Copeland v. Bowen, 861 F.2d 536, 540 (9th Cir. 1988). Rather, what is required is that the ALJ make specific findings justifying his decision to discredit certain alleged impairments and that those justifications be supported by substantial evidence. See Gallant v. Heckler, 753 F.2d

32

1 | 1450, 1456 (9th Cir. 1984); Embry v. Bowen, 849 F.2d 418, 422 (9th
2 | Cir. 1988).   Here, the Court previously determined that the ALJ
3 | properly found that plaintiff's statements about the severity of her
4 | impairments were not generally credible.   Given the fact that the ALJ
5 | provided specific findings justifying his decision to discredit the
6 | additional impairments, such impairments were properly excluded from
7 | the hypothetical presented to the vocational expert.

8 |   Therefore, the Court concludes that the ALJ presented a
9 | hypothetical to the vocational expert that fully considered all of
10 | plaintiff's limitations.

**ORDER**

13 |   After careful consideration of all documents filed in this
14 | matter, this Court finds that the decision of the Commissioner is
15 | supported by substantial evidence and the Commissioner applied the
16 | proper legal standards.   The Court, therefore, AFFIRMS the decision of
17 | the Commissioner of Social Security Administration.

18 |   **LET JUDGMENT BE ENTERED ACCORDINGLY.**

DATED: May 9, 2007

                                    /s/
                                    JENNIFER T. LUM
                                    UNITED STATES MAGISTRATE JUDGE